## *4.* URIE *against* JOHNSTON.

### IN ERROR.

The child of a registered servant until twenty-eight years, who was registered as a
servant, and claimed as such, and sold for a full price, can not, after he has been
discharged by *habeas corpus* from servitude, recover in an action of assumpsit upon
*a quantum meruit* from the person, who received his services, and who had paid
that price, a compensation for his services. Having paid such price for his servi-
tude, he may in conscience, refuse to pay such servant for his services, and
therefore, the servant can not recover compensation therefor.

ERROR to the Court of Common Pleas of *Cumberland* county.

*Sampson Johnston* the plaintiff below brought *indebetatis as-
sumpsit* for work, labor and services against *Urie*, and recovered
a verdict for three hundred and seventy dollars. *Johnston* was
the son of a negro woman, who being the child of a slave, was
registered and held to service until she arrived at the age of twen-
ty-eight, under the act for the gradual abolition of slavery.

*Johnston* himself was registered under the act, and claimed as a
servant until twenty-eight. He was stated in the registry to have
been born on the 8th of July, 1800, and on the 16th of September,
1816, his time as a registered servant was transfered to *Urie* the
defendant below, for five hundred and forty-two dollars. Proof was
given that from that period he worked for the defendant, who
from time to time directed him in his labor, and evidence was
also given of his industry, fidelity and the value of his services,
and for the defendant of his being well taken care of, and taught to
read, &c. On the 7th of January, 1827, he was discharged upon
*habeas corpus*, from the custody of the defendant, and shortly after
this suit was brought. The plaintiff claimed for his work and labor
after he came of age, up to the time of his discharge, and the de-
fendant who pleaded *non assumpsit* contended that he could not
recover in this action.

The Court of Common Pleas, REED President, charged the jury
as follows:

"It appears from the evidence that *Jane*, a coloured woman, was
the mother of the plaintiff, that she was the daughter of a slave,
was regularly registered; and was held as a servant till twenty-
eight, when she was liberated. *Sampson* was born before she was
free, and was registered conformably to the acts of assembly, with
a view of securing his services, as a servant, till twenty-eight. He
was transferred through two or three different hands; and finally,
*Thomas Urie*, the defendant, bought his services from the execu-
tors of *J. Randolph*, for the sum of five hundred and forty-two

dollars. The bill of sale is dated the 16th of September, 1816. The boy was then probably about sixteen or eighteen years of age. It is very probable that *Thomas Urie* believed, when he made the purchase, that *Sampson* was legally bound to serve till he would arrive at the age of twenty-eight years: and it is not unlikely *Sampson* was under the same impression. By virtue of his purchase, he took *Sampson* into his employment, held him and directed his services up till the 7th of January, 1827, when he set up a claim to his freedom, and was discharged under a writ of *habeas corpus.*

The first question made is, whether the plaintiff under these circumstances, is entitled in law, to recover.

Whenever a freeman labors in the service of another man, at his request, the law awards a compensation for such services, without any actual promise, or agreement, to that effect. In this case, *Sampson* was a freeman, and rendered service for *Thomas Urie,* no doubt at his request, and by his procurement: these facts would, of themselves, raise in law a promise to pay. They would cast the burden of proof upon the defendant to repel such presumption. We do not think the mistake, or misapprehension of the parties, or the illegal claim of the defendant to the plaintiff's services would repel such implication. If the plaintiff can not recover in this form of suit, I do not see how he could in any other form. Trespass would not probably lie; for no trespass is proved. The mere voluntary transition from one man to another, without fraud or constraint, would not constitute a trespass. The service of *Sampson,* rendered to *Thomas Urie,* so far as we can judge, was voluntarily rendered: at least there is no proof of force; and there is no allegation that in the present form of suit, the points of inquiry are not fully and fairly presented: no surprise is alleged. Every opportunity was afforded; and when the replication to the statute of limitations was put in, it was with an express understanding, that the plaintiff should have any benefit that could be derived under any form of replication. It would be a reproach to the law, to say that in a case of this kind, there is no remedy. The law adapts itself to circumstances; and no action is of a more liberal character than the present. It is of simple, but of comprehensive form; and is well suited to meet the present claim. No doubt, where there is an express contract between parties, the law will not imply one. Where the parties fix their own designs and intentions, the law will not alter them, by any silent implication. But where an assent is given under a mistake, parties are not held to it. If money is paid voluntarily—paid and received by consent, under a mutual misapprehension of the party's rights, and in a case where it cannot be conscientiously retained—in such case, an action for money had and received by the defendant for the plaintiff's use, will lie, on the im-

plied assumpsit, to recover such money back again, although no such intention actually existed at the time.   Now here, if services were voluntarily rendered by the plaintiff for the defendant, and at his special request, under a mutual mistake of the parties' rights, and under circumstances that would render it unconscionable and unjust, for the defendant to request and have such services without rendering a compensation therefor, why should not the law raise a promise to pay in such case—as well as it would to refund money in the case before stated?   A mistaken intention, a mere misapprehension in parties, will not prevent the law from raising a promise so as to effectuate justice, and to do that which the parties would no doubt have done, if they had acted under a proper knowledge of their rights.   I cannot, therefore, see any thing in the facts stated to bar the plaintiff's action.

If so, the next inquiry is as to the amount the plaintiff should recover.   The plaintiff waives the question on the statute of limitations, by only asking a compensation for five years and six months before suit brought, and from the time, alleged by the defendant, that *Sampson* came of age.   The amount of compensation must be regulated by the jury upon a fair consideration of all the circumstances.   On one hand the plaintiff had a home, sick or well, wet or dry, cold or warm.   He was free from the care and trouble of looking after work; the risk of making bargains, loss of time in going from place to place, and the expenses incident to these inconveniences.   He was found in clothing and in food.

On the other hand, the defendant had the services of the plaintiff from time to time, and continually—a regular hand.

The price paid to *Randolph's* executors is not to be taken into the account as a payment to the plaintiff.  Mr. *Urie* has his remedy over for it in another quarter."

Error was assigned in the charge of the court, that the plaintiff could recover.

*Alexander* and *Carothers* for plaintiff in error were stopped by the court.

*Penrose* for the defendant in error.   Two questions are presented,

1st.  Is the plaintiff entitled to recover for the services rendered by him for the defendant? and 2d.  Is assumpsit the proper form of action for his case?

It is a universal principle of law, as well as of natural equity, that every right has a remedy proper for its recovery, and every wrong an appropriate mode of redress.   Here the evidence given established most abundantly the services rendered by the plaintiff for the defendant, and proved their value, and that value the verdict

(Urie *v.* Johnston.)

of the jury has fixed and ascertained, upon a consideration of all the circumstances. The plaintiff below, the court perceive, waived all right to recover any thing for his services before he came of age. He agreed, notwithstanding the proof ascertained their value to have been considerable, to permit them to go to the account of the care which the defendant had taken of him, while he was in his minority; although the evidence proved that those services were much more than a compensation for that care. Going, as the plaintiff did, for a compensation for his labor after he came of age, during a considerable proportion of the best part of his life, spent industriously in the service of the defendant, his case presented one of peculiar equity. It is in vain to conjecture, that if he had not worked during this period for the defendant, and had been employed by others, and received wages for his labor, he would not have been able to have accumulated a sum so considerable as that which the jury have awarded to him. It is equally out of place to bring into the argument the suggestion that he owed an obligation to the defendant for the mode in which he was reared, and the excellent character which he derived from the culture of the defendant. These speculations are illegitimate, after a verdict in the cause. They were topics for the consideration of the jury, and were urged before that tribunal with all the zeal, and ability which distinguish the gentlemen concerned for the defendant. No doubt they had their appropriate weight with the jury. The verdict of the jury has ascertained what the services of the plaintiff were worth, after making to the defendant a full allowance for every benefit which he had conferred upon the plaintiff.

The plaintiff then has rendered to the defendant services, which after deducting every thing which the defendant could fairly claim, and allowing him much more in the services of the plaintiff before he came of age, are worth the sum of three hundred and seventy dollars.

Is he not bound to make compensation for those services? Does not every principle of equity and justice require that they should be compensated? It is suggested here that the services rendered were rended under a mistake mutual to both parties.

Suppose this to be so; it in no degree diminishes the value of these services: the defendant received, and has enjoyed the benefit of them, and the plaintiff has parted with them. And it is settled that a benefit arising to the defendant, or a loss to the plaintiff, is a sufficient consideration to support an action on an implied assumpsit. *Hamaker* v. *Eberly*, 6 *Binn.* 509. There is no express contract in such cases, and perhaps in very many of them, a contract was not contemplated by the parties, and it might be urged, that to imply a contract, in such circumstances, would be to involve the party, to be affected by it, in a mistaken apprehension of his responsibili-

(Urie *v.* Johnston.)

ties, producing much, and unexpected inconvenience to him: but the law which requires of every man to render unto his fellow his due, implies a contract upon the plainest principles of gospel morality.    If I pay money to another by mistake, or if another ignorantly or tortiously appropriate my goods, I may recover back the money paid in mistake, or I may waive the tort; and recover in assumpsit the value of those goods upon an implied contract; and yet my money or the value of my goods may have passed from the hands of the person who received them, and he may be put to much inconvenience to do me justice.

Justice regards the rights of both parties, and does not give all to one: and it is more just that the defendant should suffer this inconvenience than that I should be wholly deprived of my property, to which he has no right.    In such cases it may be often proper to refer to a jury, the propriety of giving interest or not, on the claim of the plaintiff.

1 *Chit. Plea.* 90.    *Arris & Arris* v. *Stukly,* 2 *Modern,* 260.    *Mathers* v. *Pearson,* 13 *Serg. & Rawle,* 258.    *Lee* v. *Gibbons,* 14 *Serg. & Rawle,* 111.    *Hamaker* v. *Eberly,* 2 *Binn.* 509.    *Lemine* v. *Dorrel,* 2 *Lord Raymond,* 1216.    *Bank of North America* v. *McCall,* 4 *Binn.* 374.    *Clinton* v. *Strong,* 9 *John. Rep.* 370.    *Jones* v. *Rees,* 4 *Yates,* 109.

The case at bar is much stronger for the plaintiff, than the case of money paid by mistake, which may be recovered back.    In the case of money paid by mistake, the whole subject-matter of the implied contract passes from the defendant to the plaintiff, but in our case, we leave with him our services, the value of which he has received, and which is mingled with his estate; we only ask him to pay a compensation for that value.    Is it right, is it just that he should retain both?    Equality is equity.    He has our services, let him pay their price, the laborer is worthy of his hire, and you establish that equality, you produce that equity.

This action is certainly founded in contract, of which consent or agreement is the essense.    But the existence of the contract, necessary to support the implied assumpsit, is a fiction of law devised to promote justice, and in many cases is not only inconsistent with the design of the parties, but is flatly contradicted by their acts and declarations, which put the negative upon all idea of the assent of the party to a contract.    As in case of money obtained by duress of the person, or goods, or by fraud or deceit.    In point of fact no contract exists here, but the law to do justice implies an equitable fiction, a contract in the favor of the party injured.

He may wave the tort, and go upon the contract.

If *Johnston* had brought a *homine replegeando,* instead of a *habeas corpus,* there can be no question, but that he would have recovered a judgment, which would have restored him to liberty:

(Urie *v.* Johnston.)

but he would have recovered damages for his detention, and the standard of these damages would have been measured by his services. *Elson* v. *McColloch,* 4 *Yates,* 115. *Jones* v. *Reese,* 4 *Yates,* 109. These cases establish beyond dispute the right of the plaintiff to recover for his detention and services.

It is a legal right which the defendant could not gainsay, if this were a *homine replegiando,* by alleging a misapprehension on his part; and it is a right which, as it is in favor of liberty, should be cherished as sacred.

The right to recover, in any form of action, being established, leaves the question, as to the proper amount to be recovered, to the jury, who, in the present case have passed upon it, and cleares the plaintiff of the principal difficulties in the case.

If the right exist in one form of action, it would be an anomaly to say, that in another form of action, and that of the most equitable character, and considered always favorable to the defendant, that right could be defeated by any other argument but one which went to show that the form of action was misconceived.

It is suggested that the defendant may, in equity and good conscience, after having received the value of the plaintiff's services, retain that value, and refuse to pay for it; and this because there are some cases, to which this has been likened, where money paid by mistake can not be recovered back; because the defendant can, in good conscience retain the money so paid.

It may be remarked, that although the reason of those cases which establish the general rule, that money paid by mistake may be recovered back by the payor, has been invoked to sustain the plaintiff's claim, it is not conceded that his claim is not distinguishable from them, and supported upon far more favorable principles. He asks to take nothing from the defendant, for which he has not given the full value, while the defendant unjustly claims both the labor and its price. Suppose the plaintiff had placed in the possession of the defendant a specific chattel, which by mistake, both parties suppose to be the property of the defendant, but which was afterwards discovered to be the property of the plaintiff; should the defendant determine to retain that chattel, would any principle of equity protect him from the payment to the plaintiff of the value, or price of the article? To be sure if any circumstance had grown out of the mistake, which affected that value, it would be for the jury to consider of it; it certainly would not authorise the court to decide the question, much less to decide the whole against him, upon a conjecture of circumstances beside the merits of the cause, as they were disclosed by the evidence and weighed by the jury. But the cases in which the defendant has been permitted to retain money paid by mistake are exceptions to a general rule. They have struck me as being of doubtful equity, and it would seem to

28

me, that it would be more consistent with justice in every case, where the defendant claimed to retain money so paid, to submit the circumstances to a jury, rather than to assume the decision of them as a question of law.

But in such cases for the most part, it will be found, that the defendant was protected, owing to some peculiar or official advantage, which the plaintiff had to inform himself of the circumstances, before he made the payment.

Such is the case of the Sheriff who by mistake pays money to a creditor whose judgment is not covered. But where money is received by an officer *colore offici*, to which he has no right, it may be recovered back in the action of *indebitas assumpsit*. *Clinton* v. *Strong*, 9 *John*. 370.

Here the master claimed *colore offici*, by a colour of right, services from a person who was a minor at the time he came into his servitude. The relation and its circumstances gave him peculiar advantages in controlling the plaintiff, while his station in society, and his superior knowledge gave him opportunities of information which it is manifest the plaintiff had not; and which added force to the influence which the relation conferred upon the plaintiff. When this relation is considered, when it is considered that the defendant has the value of the services of the plaintiff, I cannot perceive how it can be urged that in good conscience he may withhold payment for them. If that good conscience consist in the observance of the golden rule, that we should do unto others that which we, in similar circumstances would wish that they should do unto us, it would certainly be grossly violated by suffering the defendant to shelter himself with this defence.

The anxiety which the law justly discovers to produce equality by suffering a jury to make compensation between parties, where value passes from one to the another, is exemplified by referring to some of those cases where the principal is conceded, that a voluntary courtesy cannot be made the foundation of an action to recover compensation. Thus it is properly ruled, that where one renders services in expectation of a legacy, and no legacy is given, he cannot recover for those services, but if such services be performed at the *request* of the testator, no matter what his expectations were, assumpsit may well be supported to recover compensation, and in that case the Supreme Court said that the judges "very properly and fairly left the question 'of request' to the jury; under all the circumstances. In such a case very slender testimony would satisfy ingenuous minds. It was a case of great hardship," and they sustained the verdict although the damages were said to be "liberal." *Roberts* v. *Kidd*, 1 *Yeates*, 209. It may me remarked that the court does not assume to decide the question as a question of law, upon the evidence, but it is submitted "to the

(Urie *v.* Johnston.)

ingenuous minds" of the jury, and they are left to infer a "request" upon very slender testimony "under all the circumstances." On the principles of this case in some degree we relied. If in some sort, his services were voluntary, he proved that the defendant always directed him in the performance of those services. Here was evidence of a request upon more than "slender testimony," which "under all the circumstances," and in a "hard case," the court "very properly and fairly" submitted to "the ingenuous minds of the jury," who had no hesitation after hearing every argument which ingenuity could devise to evade the claim of the plaintiff, and after making every allowance which he could fairly ask, to find for the plaintiff. It is a case of mere justice, in which the court were justified in the exercise of legal astuteness if it were required, to give the plaintiff his demand. But it is said that *Urie* paid·five hundred and fifty dollars to *Randolph* for the services of the plaintiff for which he should be allowed in this action. He purchased the servitude of the plaintiff when he was sixteen years of age, when his services were worth, as it was proved, far more than his keeping, and for those services until he was twenty-one the plaintiff has made no claim. A fair allowance for this period would have met his argument, had it been legitimate in this cause. But how could this payment made to a third person, who had no right, confer any equity upon the defendant as against the plaintiff who was a minor at the time and no party to the transaction. If my horse be stolen, and has passed into the hands of an innocent purchaser, for a valuable consideration, that person could not surely defend himself against my right to recover, by resting upon the full price he paid to the thief. But it is a sufficient answer to this argument to say that Mr. *Urie* would be entitled to recover back the amount which he paid for the plaintiff to *Randolph* making all fair allowances. *Jones* v. *Reese*, 4 *Yeates*, 109.

The very point which is raised in this case, is ruled by the Supreme Court in the case of negro *Peter* v. *Steel*, 6 *Yeates*, 250. The decision in that case is that *indebitatus assumpsit* on a *quantum meruit*, will lie by a free negro for work, &c. against a person who held him in his service, claiming him as a slave.

The plaintiff then not only relies on reason and justice, but the *stare decisis* for the two positions which he assumes. '

1. He is entitled to recover for the services rendered by him to the defendant. 2d. Assumpsit, the form of action selected, is the proper form of action for his case.

The opinion of the court was delivered by

KENNEDY, J.—The Defendant in error is a negro, and the son of a negro woman who was born and regularly registered a Penn-

sylvania servant until the age of twenty-eight years; and she was the daughter of a regularly registered Pennsylvania slave for life. The defendant in error was born on the 8th of July 1800, during the servitude of his mother, and registered by her master in eight days after his birth. He was held and considered as a servant under the abolition act of the 1st of March 1780, and as such had been transferred and sold, two or three times, and in the last instance, on the 16th of September, 1816 to the plaintiff in error; for the price of five hundred and fifty dollars. He was held by the plaintiff in error as a servant without any opposition, or doubt, or question being made or entertained of his being legitimately so, until the 27th of July, 1829, when he was discharged from the service of the plaintiff in error upon a writ of *habeas corpus*. This was shortly after the Supreme Court of this state had decided in the case of *Miller* v. *Dwilling*, that the child of one bound to serve to the age of twenty-eight years, was not bound to servitude for the same period; but was absolutely free. Until this decision, a directly opposite opinion was entertained, and prevailed not only with a great portion of the community, but with many of the most distinguished lawyers of the state. In confirmation of this I refer to the case of *Stiles* v. *Nelly*, 10 *Serg. & Rawle*, 366. Although it appeared upon the face of the record in the statement of that case, that *Nelly* was the child of one bound under the act of the first of March, to servitude, until twenty-eight only, it never occurred to her counsel to claim her freedom upon that ground, nor yet to any one of the learned judges of the court, whose duty it certainly was, if not *in favorem vitæ*, in favor of liberty, a right much more highly estimated by many, to have pronounced her free, for that cause if they had thought so, although it was not mentioned or contended for by her counsel. I have no doubt she would have been so declared at the time had the same opinion been entertained by the judges of the Supreme Court then, as at the time of the decision in *Miller* v. *Dwilling*. Indeed I know that the minds of some of our most distinguished jurists in the state vacilated on this question. And although the language of the act of assembly was at all times the same, and underwent no change, yet I think it may be said, that it was doubtful what its construction would be until it was judicially declared. In short, that it was doubtful what the law was on this point until this court determined it.

Considering this state of uncertainty, as to what the law was when the plaintiff in error bought the defendant as a servant until twenty-eight, and the extravagant price of five hundred and fifty dollars, which he paid for him, it cannot be presumed that the plaintiff doubted that the defendant in error was a servant until twenty-eight. It must be presumed that the defendant in

(Urie *v.* Johnston.)

error knew his genealogy, at least as well, if not better than the plaintiff in error, and even after he attained the age of twenty-one, he continued to live with the plaintiff in error as his servant, without any the least objection until he was twenty-seven years of age. During all this time, at least it may be said, that the defendant in error, was as much bound to know his condition and rights as the plaintiff. He might certainly waive, or forbear to assert them as long as he pleased. It does not appear that the plaintiff ever endeavored or attempted to use any unfair means in order to prevent the defendant in error from claiming, and obtaining his liberty if he chose. The counsel for the defendant in error, has contended that his claim may be likened to the case of money paid through mistake, which may be recovered back as he alleges. That the defendant in error performed the services for the plaintiff as his servant, under a mistake of his real condition, not knowing that he was a freeman, and that the plaintiff in error being greatly benefited by his services is bound by the ties of natural justice and equity to remunerate him. It is true that assumpsit will lie for money had and received, in all cases where by the ties of natural justice and equity the defendant ought to refund the money paid to him; except when he may with a good conscience receive it, and there was no deceit or unfair practice in obtaining it; in which case although the money could not be recovered by law, the action will not lie to enable the party who paid it voluntarily, to recover it back again. *Morris* v. *Tarin*, 1 *Dall.* 148. *Bogart* v. *Nevins,* 6. *Serg. & Rawle,* 369. *Irvine* v. *Hanlin,* 10 *Serg. & Rawle,* 219. Let the matter then be tested by this rule, and the question will be, did the plaintiff in error, under the circumstances of this case receive the labour and services of the defendant in error with a good conscience, in payment or satisfaction of the five hundred and fifty dollars which he had advanced for him? It must be admitted that the plaintiff in error was entitled to have either the services of the defendant in error or to have his money repaid, that he had a just and conscientious claim to the one or the other: if so, surely he might very fairly and honestly receive his money, or the services in satisfaction of it from the defendant in error, or any other who was willing to pay or perform service for it. In such a case, it is not sufficient, as has been contended, to affect the conscience of the plaintiff in error, that the services although performed willingly by the defendant in error, were performed under mistake; because, in the case of a sheriff paying through mistake, money made by him, to a plaintiff in a junior execution, when he ought to have paid it on a senior, he cannot recover it back, although by doing so he made himself liable to the plaintiff in the senior execution, to pay it again to him. The mistake of the sheriff in this case, has

(Urie *v.* Johnston.)

never been held to affect the conscience of the junior execution creditor, who had no right to demand the money. The amount of his execution was justly due to him, and he might therefore fairly receive it of the sheriff or of any other person who was willing to, pay it to him. It was the business of the sheriff to know what his duty was, and if he mistook it, he must be the sufferer. This is certainly a much harder case than the one now before the court. In the case of the sheriff, he is clearly the loser to, the whole a-mount of the money paid by him, but in the case under considera-tion the defendant was supported, and maintained entirely at the expense of the plaintiff in error, who furnished him with boarding lodging and clothing, as also every other necessary of life. If he would have made more than this for himself, had he put in the same time under the idea that he was free, and his own master, may be doubtful; at least it is not certain, that he has actually sustained any loss.

The defendant in error was at least bound in gratitude to make compensation for the care, attention and expense bestowed, and in-curred in raising and instructing him from his birth, until he became able to take care of and provide for himself. And as his counsel allege that he is a man of considerable merit, it may be presumed that he owes this in part to his good education, and the careful manner in which he was brought up. For all this he stood in-debted to the plaintiff in error, who has either paid for, or furnish-ed it himself. Beside it may be observed that the defendant in error had been abandoned by the master of his mother in his ear-liest stage of infancy, he would perhaps have fallen into the hands of the overseers of the poor of the township in which he was born, and I am inclined to think that they, under the fourth section of the abolition act of the first of March, 1781, might have bound him out as an apprentice until he would have arrived at the age of twenty-eight years; this they were clearly authorised to do in certain cases; so that the lot of the defendant in error may have been better than otherwise it would, had he been given up shortly after his birth by the master of his mother; for certainly he was not bound to maintain him beyond his pleasure, and if he did so, he ran the risk of getting nothing for it.

Upon the principle that is contended for, this action ought to be supported by every apprentice that is bound by an informal or void indenture. After he has served out his apprenticeship, he might turn round and sue his master for his services. So *Nelly*, who served Mr. *Stiles* in the case already cited, might sus-tain a suit against him for her services notwithstanding she was adjudged by the decision of the Supreme Court to be his servant, because, according to the last decision on her condition, in the case of *Miller and Dwilling*, she was free. Now such suits and

(Urie *v.* Johnston.)

claims have never been thought of, and I have no hesitation in saying that they cannot be supported.

The case of negro *Peter v. Steel,* 3 *Yeates,* 250, which has been cited and relied on by the counsel for the defendant in error, does not bear upon the merits of this case; it decides nothing more than that the merits, if the plaintiff has any, may be tried in an action of assumpsit, which I think is perfectly correct. Again, it has been said, that in actions *de homine replegiando,* brought by those who have been held as slaves or servants, in which recoveries have been had, that damages have been uniformly given, and allowed, this is true, and in every such case damages follow a recovery of course; but then they may be nominal only; and certainly ought to be no more in a case where the defendant in the action *de homine replegiando,* had the same ground for claiming and accepting of the service of the plaintiff, that the plaintiff in error had to the service of the defendant in error in this case. If the holding the plaintiff in the action *de homine replegiando* be decided to be unlawful, some damages must be given for that, at least nominal, but they are not necessarily given upon the ground of compensating for services; for the action, or issue joined in it, does not involve that question.

It is not pretended that there was any express contract in this case between the parties upon which the plaintiff below can sustain his claim against the defendant. As to an implied assumpsit, I think that none can be raised. The defendant below might have conscientiously received the services of the plaintiff until he attained the age of twenty-eight years, if he had continued to render them, and would have had a right to consider and apply them towards the satisfaction of the money which he paid for him. Suppose *Johnston* had continued to serve *Urie* until he was twenty-eight, and *Urie* had brought a suit against his vendor of *Johnston's* servitude, to recover the five hundred and fifty dollars, would not *Johnston's* having served out the whole term for which he was sold have been a bar to the action? Most certainly it would. See *Nickerson* v. *Howard,* 19 *John. Rep.* 113. Although *Johnston* was not bound by law, and could not have been compelled to serve *Urie,* and in that way satisfy him for the money which he had paid, and was entitled to be compensated for, in some way; yet having done so, he cannot claim now to have his character changed into a hireling, and be paid for his labour con-

*Note.*—It was decided by *Lord Kenyon,* in *Alfred* v. *Marquis of Fitzjames,* 3 *Espinasse Rep.* 3, that a servant who comes over from the West Indies, where he has been a slave, and who continues in the service of his master in England, without any agreement for wages, is not entitled to any, unless there has been an express promise.—REPORTERS.

(Urie *v.* Johnston.)

trary to the understanding that existed between them during the whole time of such labour or service.

The judgment of the court below is reversed.